1  EVAN R. MOSES, CA Bar No. 198099
   evan.moses@ogletree.com
2  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
3  400 South Hope Street, Suite 1200
   Los Angeles, CA 90071
4  Telephone:    213-239-9800
   Facsimile:    213-239-9045
5
   MICHAEL J. NADER, CA Bar No. 200425
6  michael.nader@ogletree.com
   APRIL A. PERKINS, CA Bar No. 322166
7  april.perkins@ogletree.com
   OGLETREE, DEAKINS, NASH, SMOAK &
8  STEWART, P.C.
   500 Capitol Mall, Suite 2500
9  Sacramento, CA 95814
   Telephone:    916-840-3150
10 Facsimile:    916-840-3159

11 Attorneys for Defendant
   CABLECOM, LLC
12
                    **UNITED STATES DISTRICT COURT**
13
       **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO/OAKLAND DIVISION**
14

15 KASEY SLICK, individually, and on behalf of      Case No. _____
   other members of the general public similarly
16 situated,                                         **DEFENDANT CABLECOM, LLC'S**
                                                     **NOTICE OF REMOVAL OF CIVIL**
17              Plaintiff,                           **ACTION TO FEDERAL COURT**
                                                     **PURSUANT TO 28 U.S.C. §§ 1332, 1441,**
18        vs.                                        **1446, 1453**

19 CABLECOM LLC, an unknown business entity;         [*Filed concurrently with Declarations of Nolan*
   CABLECOM OF CALIFORNIA, INC., an                  *Nurmikko, Sharon Villaverde, Ariel Kumpinsky,*
20 unknown business entity; and DOES 1 through       *and April Perkins; Civil Case Cover Sheet;*
   100, inclusive,                                   *Notice of Removal; Certification of Interested*
21                                                   *Entities or Persons, Notice of Related Cases,*
                Defendants.                          *and Corporate Disclosure*]
22
                                                     Action Filed:    April 13, 2022
23                                                   Removal Filed:   June 9, 2022
                                                     Trial Date:      None
24

25

26

27

28
                                              1

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF KASEY SLICK AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant CABLECOM, LLC ("Defendant")[1] removes this action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

## I.   THE STATE COURT ACTION

1.      On April 13, 2022, plaintiff KASEY SLICK ("Plaintiff") filed a Class Action Complaint for Restitution ("Complaint") in the Superior Court of the State of California, County of Contra Costa, entitled *KASEY SLICK, individually, and on behalf of other members of the general public similarly situated, Plaintiff v. CABLECOM LLC, an unknown business entity; CABLECOM OF CALIFORNIA, INC., an unknown business entity; and Does 1 to 100, inclusive*, Defendants, which was assigned case number C22-00692 (the "State Court Action"). The Complaint asserts a claim for Violation of California Business & Professions Code §§ 17200, et seq.

2.      Service by Notice and Acknowledgement of Receipt (Code Civ. Proc. § 415.30) was effected on May 10, 2022. Defendant received service of the Summons and Complaint, as well as other documents filed in the State Court Action. Declaration of April A. Perkins ("Perkins Decl.") ¶ 2, Exhibit A.

3.      As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action. Perkins Decl., ¶ 3, Exhibit B. Defendant has not been served with any pleadings, process, or orders besides those attached. *Id*.

///

---

[1] As set forth in more detail herein, CableCom, LLC is the only appropriately named defendant in this case. CableCom of California, Inc. and CableCom, LLC merged on September 25, 2015.

1    4.    For unknown reasons, Plaintiff names "CableCom of California, Inc." separately from

2    CableCom, LLC, which is the only appropriately named defendant in this case.   CableCom of

3    California, Inc. and CableCom, LLC merged on September 25, 2015, and CableCom of California,

4    Inc. was withdrawn on October 8, 2015[2].   Declaration of Nolan Nurmikko ("Nurmikko Decl."), ¶ 5,

5    Exhibit A.

6    5.    Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the

7    Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal.   28

8    U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

9    6.    This Notice of Removal is timely filed as it is filed less than one year from the date

10   this action was commenced and within 30 days of the service upon Defendant.   28 U.S.C. § 1446(b);

11   *Murphy Bros., Inc v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999) (30-day deadline to remove

12   commences upon service of the summons and complaint).

13   **II.    JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

14   7.    This action is one over which this Court has original jurisdiction under CAFA and is

15   one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the

16   number of potential class members exceeds 100, the parties are citizens of different states, and the

17   amount in controversy exceeds the aggregate value of $5,000,000.  See 28 U.S.C. §§ 1332(d)(2) and

18   (d)(6).

19   **A.    The Size of the Putative Class Exceeds 100.**

20   8.    Plaintiff defines the proposed class as: "[a]ll current and former hourly-paid or non-

21   exempt individuals employed by any of the Defendants within the State of California at any time

22   during the period from four years preceding the filing of this Complaint to final judgment and who

23   reside in California."  Perkins Decl., Exhibit. A, ¶ 14.

24   9.    Defendant's employment records show that there are over eight hundred current and

25   former employees who fall within Plaintiff's proposed class.   Declaration of Ariel Kumpinsky

26

27   ───────────────────
[2] And even if the Court finds that CableCom of California, Inc. is a proper defendant despite being

28   a non-existent entity, prior to 2015, it was a Delaware Corporation.

DEFENDANT CABLECOM, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453

1  ("Kumpinsky Decl."), ¶ 7.  For purposes of this removal, Defendant limited the calculations to actual

2  data reviewed for 898 non-exempt employees, for the time period April 30, 2018 – August 31, 2021,

3  whose data could be reviewed on short notice.  *Id*. at ¶ 7.

4      **B.    The Parties Are Diverse**

5      10.    Citizenship of Plaintiff and Putative Class Members.  For diversity purposes, a person

6  is a "citizen" of the state in which he or is is domiciled.  *Kantor v. Wellesley Galleries, Ltd*., 704

7  F.2d 1088, 1090 (9th Cir. 1983).  Residence is prima facie evidence of domicile. *State Farm Mut.*

8  *Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Marroquin v. Wells Fargo, LLC*, 2011 WL

9  476540, at *1 (S.D. Cal. Feb. 3, 2011) (relying on State Farm); *Smith v. Simmons*, 2008 WL 744709,

10 at *7 (E.D. Cal. Mar. 18, 2008) (same); see also *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986)

11 (allegations of residency in a state court Complaint can create a rebuttable presumption of domicile

12 supporting diversity of citizenship).

13      11.    As set forth in the Complaint, "Plaintiff is an individual residing in the State of

14 California." Perkins Decl., Exhibit A, ¶ 5.  Defendant's employment records confirm that throughout

15 his employment with Defendant, Plaintiff lived in the State of California, including the home address

16 that Plaintiff provided for payroll purposes and the addresses shown on Plaintiff's driver's license,

17 which was issued by the State of California.  Nurmikko Decl., ¶ 3.  Thus, Plaintiff is a citizen of the

18 State of California.

19      12.    Members of the proposed class, who by definition are or were employed in California,

20 are presumed to be primarily citizens of the State of California.  *See, e.g., Lew v. Moss*, 797 F.2d

21 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of

22 citizenship).  Thus, even if Plaintiff was somehow a citizen of a different state (and there is no

23 evidence that he is), there is no possible way that the hundreds of putative class members, all of

24 whom worked in California (Perkins Decl., Exhibit A, ¶ 14), were also citizens of a state other than

25 California.

26      13.    Citizenship of Defendant.  The citizenship of a limited liability company for diversity

27 purposes is determined by examining the citizenship of each member of the company.  *Johnson v.*

28 *Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Defendant CableCom, LLC

4

1 is wholly-owned and operated by its sole member Dycom Investments, Inc. ("Dycom"), which is a

2 corporation.  Declaration of Sharon Villaverde ("Villaverde Decl."), ¶¶ 2, 3.  A corporation is deemed

3 a citizen of its state of incorporation and the state where it has its principal place of business.  28

4 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend* (2010) 559 U.S. 77, 80 (the principal place of business

5 is "where the corporation's officers direct, control and coordinate the corporation's activities").

6 Dycom is incorporated pursuant to the laws of the State of Delaware.  *Id.* at ¶ 4.  Its principal place

7 of business is located in Palm Beach Gardens, Florida.  *Id.* at ¶ 5.

8        14.     Accordingly Defendant is, and has at all times since the action commenced, been a

9 citizen of the states of Delaware and Florida.

10        15.     The minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are

11 met because Defendant CableCom, LLC is a citizen of Delaware and Florida while Plaintiff, a

12 putative class member, is a citizen of California.

13      **C.**     <u>**The Amount in Controversy Exceeds an Aggregate of $5,000,000**</u>

14        16.     Plaintiff has alleged that the amount in controversy for him personally does not

15 exceed $75,000.  However, Plaintiff makes no allegations of a specific amount in controversy on a

16 class wide basis.  In order to remove a class action pursuant to CAFA, the amount in controversy

17 must exceed $5,000,000.  There is no antiremoval presumption for cases invoking the CAFA.  *Arias*

18 *v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).  Three principles must apply to

19 CAFA removals.  First, a removing Defendants' notice of removal "need not contain evidentiary

20 submissions" but only plausible allegations of the jurisdictional elements. *Id.* (quoting *Ibarra v.*

21 *Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).  "Second, when a Defendants'

22 allegations of removal jurisdiction are challenged, the Defendants' showing on the amount in

23 controversy may rely on reasonable assumptions.  *Id.*  "Third, when a statute or contract provides for

24 the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the

25 amount in controversy."  *Arias*, 936 F.3d at 922.  In assessing the amount in controversy, a removing

26 Defendants are permitted to rely on "a chain of reasoning that includes assumptions." *Id.* at 925.  An

27 assumption may be reasonable if it is founded on the allegations of the complaint.  *Id.*  Assumptions

28 made part of the Defendants' chain of reasoning need not be proven; they instead must only have

'some reasonable ground underlying them.'"  *Id*. at 927 (quoting *Ibarra*, 775 F.3d at 1199).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of Defendants' liability."  *Id*. at 927 (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)).  "In that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover."  *Id*. at 927 (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them")).

17.    Defendant denies the validity of Plaintiff's claims and requests for relief, Defendant does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief.  However, for purposes of this removal, Defendant submits that the allegations in the Complaint show that it is more likely than not that the amount in controversy exceeds the jurisdictional minimum.  *See Guglielmino*, 506 F.3d at 700.

18.    As described further below, as well as in the concurrently filed declaration from Ariel Kumpinsky, the amount in controversy far exceeds the jurisdictional minimum of $5,000,000.[3]

### 1.    <u>The Amount in Controversy</u>

19.    Plaintiff's putative class period is from April 13, 2018 until final judgment.  Perkins Decl., Exhibit A, ¶ 14.  In determining the amount in controversy to support its Notice of Removal,

---

[3] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy.  *See, e.g., Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met");  *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the Defendants' human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

1   Defendant applied conservative violation rates to calculate the amount in controversy based only on

2   damages sought by Plaintiff's claims, and based on an analysis of Defendant's timekeeping, payroll,

3   and termination data for the period from April 30, 2018 through August 31, 2021 (the "Data Period"),

4   which is only a fraction of the putative class period. [4]   Kumpinsky Decl., ¶ 7.  Plaintiff's claims

5   include the following: (1) the failure to pay overtime wages; (2) the failure to provide compliant meal

6   periods; (3) the failure to provide compliant rest breaks; (4) the failure to pay minimum wages; (5)

7   the failure to pay timely wages upon termination; (6) the failure to timely pay wages during

8   employment; (7) the failure to provide compliant wage statements; (8) the failure to keep complete

9   or accurate payroll records; and (9) the failure to reimburse necessary business expenses.  Perkins

10  Decl., Exhibit A.  Because the jurisdictional minimum requirement of $5 million is met with only a

11  fraction of these claims, Defendant do not include additional analyses for estimates of the amounts

12  placed in controversy by Plaintiff's allegations of unpaid minimum wages; failure to keep requisite

13  payroll records, unreimbursed business expenses, and the failure to provide accurate wage

14  statements.

15          20.     Defendant also based its removal calculations only on actual data reviewed for current

16  and former employees who held non-administrative hourly positions for varying time spans during

17  the four-year limitations period.  Thus, Defendant used a smaller putative class than that alleged by

18  the Plaintiff.  If necessary, Defendant could and would supplement this Notice of Removal to include

19  estimates of the additional amounts in controversy based on the other allegations contained in the

20  Complaint and for the entire proposed class and class period, however, with the reduced figures this

21  matter meets the amount in controversy limit.

22                  **(a)     The Amount Placed in Controversy by Unpaid Overtime**

23          21.     Plaintiff alleges that Defendant failed to pay overtime compensation to Plaintiff and

24  other putative class members.   Specifically, Plaintiff alleges that "Plaintiff and the other class

25  members worked in excess of (8) hours in a day, and/or in excess of forty (40) hours in a week."

26

27  _____

28  [4] This smaller data set was what was available at the time of removal, however, Defendant could
    and would be able to gather data on the entire putative class period if necessary.

DEFENDANT CABLECOM, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453

Perkins Decl., Exhibit A, ¶ 38.  Plaintiff also alleges that Defendant engaged in a "pattern and practice of wage abuse against their hourly-paid nor non-exempt employees within the State of California" by "failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks." *Id*. at ¶ 26.

22.    Plaintiff's "pattern and practice" allegations of overtime violations warrant the application of a violation rate of up to 2 to 3 hours per week of allegedly unpaid overtime.  See, *Torrez v. Freedom Mortg. Corp.*, 2017 WL 2713400, *3 (C.D. Cal. Jun. 22, 2017) (finding assumption rate of three hours of overtime per week where defendant's assumptions were based on the allegations in the complaint that defendant "engaged in a pattern and practice of wage abuse); *Stanley v. Distribution Alts., Inc.*, 2017 WL 6209822, at *2-3 (C.D. Cal. Dec. 6, 2017) (finding that pleading "pattern and practice" supports assumption of two hours of overtime per week); *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) (two hours of uncompensated overtime per workweek was reasonable based on allegations that the violations occurred "as matters of policy and/or practice").  Here, Defendant has applied a violation rate of only 10 minutes of unpaid overtime for each shift in the timekeeping records over the Data Period where more than 8 hours of work are recorded – only 50 minutes per week.  See, *Sanchez v. Abbott Laboratories*, 2021 WL 2679057 at * 5 (applying a 20% violation rate to "pattern and practice" allegations related to the overtime claim).

23.    Defendant calculated the amount in controversy by adding ten minutes of overtime to each shift during the Data Period that was recorded as more than 8 hours in length, and then multiplying that amount of overtime hours by the average overtime rate of ($23.92 (x) 1.5), which equals a total of  $1,245,131.58.  *Id*. at ¶ 28.  Consequently, the amount placed in controversy by the failure to pay overtime is at least **$1,245,161.58**.  *Id*. at ¶¶ 28, 39.

**(b)    The Amount Placed in Controversy by the Failure to Provide Required Meal Periods Claim**

24.    Plaintiff alleges that "Defendants failed to provide Plaintiff and the other class members all required rest and meal periods during the relevant time period…and thus they are entitled to any and all applicable penalties."  Perkins Decl., Exhibit A, ¶ 28.  Plaintiff alleges that

8

Defendant engaged in a "pattern and practice of wage abuse against their hourly-paid nor non-exempt employees within the State of California" by "failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks." *Id*. at ¶ 26.

25.    Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. *See Marlo v. United Parcel Serv., Inc.*, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

26.    Here, Plaintiff's pattern and practice allegations warrant the use of a violation rate as high as 60%: See, Sanchez, 2021 WL 2679057 at *4 (using a 60% violation rate for pattern and practice meal period claim is reasonable); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (50% violation rate, or 2.5 out of 5 missed meal periods per week, and a 25% violation rate, or 2.5 out of 10 missed rest period per week, found reasonable with pattern and practice allegations); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding 50% violation rate reasonable in light of allegations defendant maintained a policy or practice of not paying meal or rest premiums). However, Defendant applied a very conservative violation rate of 20% during the Data Period, which is more than enough to surpass the CAFA removal standard.

27.    Defendant calculated the amount in controversy by applying a 20% violation rate to the number of shifts in the Data Period that were more than 5 hours in length, and then multiplying that number of shifts by the average hourly base rate of $23.92, which equals a total of $1,054,872.00. Kumpinsky Decl., at ¶ 21. Plaintiff's claim for failure to provide legally compliant meal periods places an amount in controversy of at least **$1,054,872.00.** *Id*. at ¶¶ 21, 39.

### (c)    The Amount Placed in Controversy by the Failure to Authorize and Permit Rest Breaks Claim

28.    Plaintiff alleges that "Defendants failed to provide Plaintiff and the other class members all required rest and meal periods during the relevant time period…and thus they are entitled to any and all applicable penalties." Perkins Decl., Exhibit A, ¶ 28. Plaintiff alleges that Defendant engaged in a "pattern and practice of wage abuse against their hourly-paid nor non-exempt

9

1    employees within the State of California" by "failing to pay them for all regular and/or overtime

2    wages earned and for missed meal periods and rest breaks." *Id*. at ¶ 26.

3         29.    Under California law, employers must provide at least one 10-minute rest period for

4    shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012).  Employees

5    who are not provided the opportunity to take a rest period are entitled to one hour of premium pay

6    for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage &*

7    *Hour Cases*, 196 Cal. App. 4th 57, 63 (2011).   Rest period claims are properly considered in

8    determining the amount in controversy.  See, e.g., *Olson v. Becton, Dickinson & Co.*, 19-cv-865-

9    MMA, 2019 WL 4673329, *4-5 (S.D. Cal. Sept. 25, 2019); *Arias v. Residence Inn by Marriott*, 936

10   F.3d 920, 926-27 (9th Cir. 2019).

11        30.    As with the meal period violations, applying a 20% violation rate is very conservative

12   where the Plaintiff contends that Defendant had a pattern and practice of failing to provide compliant

13   rest periods.  Here, as with Plaintiff's meal period allegations, Plaintiff alleges that he and other

14   putative class members were subject to a violation for each and every rest period where a premium

15   was not provided.  Perkins Decl., Exhibit A, ¶ 28.

16        31.    Defendant calculated the amount in controversy by applying a 20% violation rate to

17   the number of shifts in the Data Period that were more than 6 hours in length (and thus eligible for 2

18   rest breaks), and then multiplied that number of shifts by the average hourly base rate ($23.92), which

19   equals a total of $1,045,016.96.  Kumpinsky Decl., at ¶ 24.  Plaintiff's claim for failure to provide

20   legally compliant rest periods places an amount in controversy of at least **$1,045,016.96**.  *Id*. at ¶¶

21   24, 39.

22              **(d)    The Amount Placed in Controversy by Wages Owed at**
                **Termination**

23

24        32.    Plaintiff alleges that Defendant failed to pay all earned wages at separation from

25   employment.  Perkins Decl., Exhibit A. ¶ 41.  In this derivative claim, Plaintiff alleges that because

26   Defendant allegedly had a consistent, systematic pattern and practice of failing to pay for all time

27   worked (Perkins Decl., Exhibit A, ¶ 26), including regular and overtime wages, and of failing to

28   ///

1  provide meal and rest breaks, that all those allegedly consistent and systematic violations also

2  resulted in departing employees being allegedly deprived of their final wages.

3     33.    Section 203 penalties "accrue not only on the days that the employee might have

4  worked, but also on non-workdays," for up to 30 days, and the accrual of these penalties "has nothing

5  to do with the number of days an employee works during the month."  *Mamika v. Barca*, 68 Cal.

6  App. 4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Section 203 is "the delay in

7  payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper

8  reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he

9  or he remained unpaid up to a total of 30 days."  *Id.* at 493.

10    34.    Because Plaintiff alleges that the unpaid wages were the result of systemic and

11 consistent illegal practices, it is reasonable to calculate the amount in controversy for this claim based

12 on a 30-day penalty calculated for each and every former employee at their daily wage rate.  See

13 *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22,

14 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs'

15 allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint

16 alleged that the defendants "'regularly required'" putative class members to work off-the-clock

17 without compensation, and the defendants estimated that each putative class member "potentially

18 suffered at least one violation that continues to be unpaid").   When final "wages [due] are alleged

19 to have not been paid, the full thirty days may be used for each of the putative class members."

20 *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); see also

21 *Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where plaintiff

22 alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable

23 to assume waiting time penalties accrued to the thirty-day limit").

24    35.    Defendant calculated the amount in controversy as follows:   First, Defendant only

25 used the relevant limitations period within the Data Period, which was from April 13, 2019 to August

26 31, 2021.  Kumpinsky Decl., ¶ 29.  Then for all hourly employees who departed during that period,

27 Defendant calculated 30 days of wages (8 hours per day) at the average hourly rate of $ 23.92, which

28 totaled **$2,112,202.06**.  *Id.* at ¶¶ 31, 39.

1

2

        **(e)**      **The Amount Placed in Controversy by Failure to Pay Wages in Timely Manner**

3

4

5

6

      36.     Plaintiff alleges in that Defendant failed to timely pay wages during employment. Perkins Decl., Exhibit A, ¶ 42.  Specifically, Plaintiff contends that Defendant intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within the any time period permissible under California Labor Code Section 204." *Id*. at ¶ 37.

7

8

9

      37.     According to Labor Code sections 204 and 210, the penalty for untimely payment of wages is $100 for the first violation and $200 for every subsequent violation with an additional penalty of 25% of the wages owed.

10

11

12

13

14

15

16

17

      38.     Defendant calculated the amount in controversy for this claim as follows:  First, Defendant only relied on its records during the Data Period that applied a one year limitations period, specifically from April 13, 2021 to August 31, 2021.  Kumpinsky Decl., ¶ 33.  During that time period, there were 11,710 wage statements provided to putative class members.  *Id*.  Then Defendant applied the statutory $100 penalty for the first pay period for each employee, and the statutory $200 penalty for each subsequent pay period.  *Id*.  Defendant did not add any additional amounts provided by the Labor Code for the 25% of the alleged wages owed.  *Id*.  Consequently, the amount placed in controversy by this claim is at least **$2,285,400.00.**  *Id*. at ¶ 34, 39.

18

          **(f)**      **The Amount Placed in Controversy Includes Attorneys' Fees**

19

20

21

22

23

24

25

26

      39.     The Ninth Circuit recently reaffirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922; see also *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy."); *Muniz*, 2007 WL 1302504 at *3  ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint.").

27

///

28

///

DEFENDANT CABLECOM, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453

40.     Here, Plaintiff claims that he is entitled to attorneys' fees for various alleged violations of the California Labor Code. Exh. A, Prayer For Relief.[5]   The Court may consider all attorneys' fees that at the time of removal can reasonably be anticipated will be incurred over the life of the case.   *See Fritsch*, 889 F.3d at 794 ("Because the law entitles [Plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Goldberg v. CPC Int'l*, 678 F.2d 1365, 1367 (9th Cir. 1982) (noting that "potential attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement); *Haase v. Aerodynamics Inc.*, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519, at *5 (E.D. Cal. 2009) ("[B]ecause attorney's fees are expressly authorized by statute, such fees may be included in determining the amount in controversy . . . ."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (stating that "the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred" and noting that "attorney's fees cannot be precisely calculated" but making projection of likely fees based on the court's "twenty-plus years' experience" overseeing similar cases).

41.     Under Ninth Circuit precedent, 25% of the common fund is generally used as a benchmark for an award of attorney fees.  See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17119, at *15 (S.D. Cal., Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (citations omitted); *Muniz*, 2007 WL 1302504 at *4, n.8 (noting that in California, where wage and hour class actions have settled prior to trial, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement); *see also Jasso,* 2012 WL

---

[5] Plaintiff alleges attorneys' fees throughout his Complaint. As such, it is clear that attorneys' fees are properly included in the amount of controversy calculation.  Exh. A. ¶ 1, 16c, 64 and Prayer for Relief.

699465, at *7 (noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees'") (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998)).

42.     Accordingly, Defendant applies a reasonable amount for Plaintiff's attorneys' fees in of at least 25% of the amount placed in controversy through Plaintiff's claims, or **$1,935,663.15**.

### (2)     Summary of Defendant's Calculations

43.     As described above, applying reasonable violation rates demonstrate that the amount in controversy presented by Plaintiff's claims for overtime, meal and rest breaks, and wage timing penalties far exceed $5,000,000 during the Data Period alone, which only represents a portion of the alleged class period.  The total amount in controversy exceeds $9M as follows:

| Claim | Exposure |
|---|---|
| Unpaid Overtime | $1,245,161.58 |
| Meal Period Claim | $1,054,872.00 |
| Rest Break Claim | $1,045,016.96 |
| Waiting Time Penalties | $2,112,202.06 |
| Failure to Timely Pay Wages | $2,285,400.00 |
| Sub-Total | $7,742,652.60 |
| 25% Attorneys' Fees | $1,935,663.15 |
| **TOTAL** | $9,678,315.75 |

Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III.     DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

44.     <u>Venue is Proper</u>.  In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Superior Court of the State of California for the County of Contra Costa is located within the Northern District of California.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

45.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant is attached as Exhibits to this Notice.

46.    In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Contra Costa.  Notice of compliance shall be filed promptly afterward with this Court.

47.    As required by Federal Rule of Civil Procedure 7.1, Local Rule 3-13, and Local Rule 3-15, Defendant concurrently filed its Certificate of Interested Parties, Corporate Disclosure Statement, and Notice of Related Cases.

48.    Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes the above-captioned action to the United States District Court for the Northern District of California.

DATED:  June 9, 2022

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _____
Evan R. Moses
Michael J. Nader
April A. Perkins

Attorneys for Defendant
CABLECOM, LLC

DEFENDANT CABLECOM, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453

1

## CERTIFICATE OF SERVICE

2

      I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of Sacramento, in the office of a member of the bar of this court at whose direction the service was made.  My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA  95814.  My email address is noreen.witt@ogletree.com.

3

4

5

      On June 9, 2022, I served the following document(s):

6

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453**

7

8

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated on the attached mailing list.

9

☒    **BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

10

11

12

13

☐    **BY MAIL:**  I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at 500 Capitol Mall, Suite 2500, Sacramento, CA  95814.

14

☐    **BY OVERNIGHT DELIVERY:**  I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Sacramento, California.  I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

15

16

17

18

☐    **BY FACSIMILE** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

19

20

        ☐    the written confirmation of counsel in this action:

21

        ☐    **[State Court motion, opposition or reply only]** Code of Civil Procedure section 1005(b):

22

23

☐    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person[s] at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

24

25

26

27

28

16

DEFENDANT CABLECOM, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453

| | |
|---|---|
| 1 | Edwin Aiwazian, Esq. |
| | Charles T. Sweeny, Esq. |

Edwin Aiwazian, Esq.
Charles T. Sweeny, Esq.
Harry Erganyan, Esq.
LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, CA  91203
Telephone:     (818) 265-1020
Facsimile:      (818) 265-1021
Email: charles@calljustice.com
       harry@calljustice.com
       vardui@calljustice.com
       kathleen@calljustice.com

Attorneys for Plaintiffs
Kasey Slick, et al.

☒    (Federal)   I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on June 9, 2022, at Sacramento, California.

Noreen F. Witt
_____
Type or Print Name

*Noreen F. Witt*
_____
Signature

DEFENDANT CABLECOM, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453